UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SARKIS SARKISIAN and FRANK ANDRIANAKOS

                                Plaintiffs,         Case No.:
                                                    23-cv-6154 (JSR)

   -against-


OPENLOCKER HOLDINGS, INC.
F/K/A  DESCRYPTO, INC.
F/K/A W TECHNOLOGIES, INC.

                                Defendant.
-------------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER**

CYRULI SHANKS & ZIZMOR LLP
Attorneys for Plaintiff
420 Lexington Avenue
Suite 2320
New York, NY 10170
(212) 661-6800

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND FACTS | 1 |
| III | ARGUMENT | |
| | A. Defendant's Motion to Dismiss Should Denied | 5 |
| | B. Defendant May Not Challenge Venue | 10 |
| | C. Defendant's Motion for Transfer Should Be Denied | 10 |
| IV. | CONCLUSION | 15 |

# TABLE OF CASES AND STATUTES

*CASES*

| | |
|---|---|
| *Albert Fadem Trust v. Duke Energy Corp.,* 214 F.Supp.2d 341, 343 (S.D.N.Y.2002) | 11 |
| *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986) | 6 |
| Daimler AG v. Bauman, 134 S.Ct. 746 (2014) | 7 |
| D.H. Blair Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006). | 11, 12 |
| *DiStefano v. Carozzi N. Am., Inc.,* 286 F.3d 81, 84 (2d Cir. 2001) | 7 |
| *Eades v. Kennedy, PC Law Offices,* 799 F.3d 161, 168 (2d Cir. 2015) | 9 |
| *Ehrenfeld v. Bin Mahfouz,* 9 N.Y.3d 501, 508 (2007) | 9 |
| *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978) | 12 |
| *George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648 (1997) | 10 |
| *Glass v. S & M NuTec,* 456 F.Supp.2d 498, 501 (S.D.N.Y. 2006) | 11 |
| *Gross v. British Broadcasting Corp.,* 386 F.3d 224, 230 (2d Cir. 2004) | 12 |
| *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.,* 419 F.Supp.2d 395, 402 (S.D.N.Y.2005) | 11 |
| *Kahn Lancaster, Inc. v. Lark Int'l Ltd.,* 956 F. Supp. 1131, 1125 (S.D.N.Y. 1997) | 10 |
| *Landoil Res.Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir. 1990) | 7 |

*Licci v. Lebanese Can. Bank, SAL,* 9
  20 N.Y.3d 327, 338, 960 N.Y.S.2d 695 (2012)

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 6
  84 F.3d 560, 566 (2d Cir. 1996)

*O'Hopp v. ContiFinancial Corp.,* 11
  88 F.Supp.2d 31, 34 (E.D.N.Y.2000)

*Polizzi v. Cowles Magazines, Inc.,* 10
  345 U.S. 663, 665-66 (1953)

*PT United Can Co. v. Crown Cork & Seal Co.* 10
  138 F.3d 65, 72 (2d Cir. 1998).

*Robinson v. Overseas Military Sales Corp.,* 6
  21 F.3d 502, 507 (2d Cir. 1994)

*Stroud v. Tyson Foods, Inc.,* 9
  91 F. Supp. 3d 381, 387 (E.D.N.Y. 2015)

*Sonera Holding B.V. v. Cukurova Holding A.S.,* 7
  750 F.3d 221, 224 (2d Cir. 2014)

*Wiwa v. Royal Dutch Petroleum Co.,* 7
  226 F.3d 88, 95 (2d Cir. 2000)

**Statutes**

28 U.S.C. § 1404(a) 11

New York CPLR 302(a)(1) 9

New York CPLR 311 8

Fed. R. Civ. P. 12(b)(6) 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SARKIS SARKISIAN and FRANK ANDRIANAKOS

                              Plaintiffs,

  -against-                                                       Case No. 23-cv-6154
                                                                           (JSR)

OPENLOCKER HOLDINGS, INC.
F/K/A DESCRYPTO, INC.
F/K/A W TECHNOLOGIES, INC.

                              Defendant.

-------------------------------------------------------------------X

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER

## I. INTRODUCTION

Plaintiffs submit this Memorandum in opposition to Defendant's motion to dismiss and/or transfer this action to the Southern District of Florida. As will be shown herein, Defendant has failed to meet it burden of demonstrating that this action should be either dismissed or transferred.

## II. BACKGROUND FACTS

This action was commenced by the Plaintiffs in New York State Supreme Court, New York County on June 5, 2023 via the filing of a Summons and Verified Complaint. On July 17, 2023, Defendant removed this action to United States District Court for the Southern District of New York. The following summarizes the facts set forth in the Verified Complaint or that were publicly disclosed by Defendant in its filings with the U. S. Securities Exchange Commission ("SEC") and the OTC Markets Disclosure Service.

The Promissory Notes

Plaintiffs are holders in due course of two promissory notes issued by Defendant (collectively, the "Notes"). The Notes are now in default and this action was commenced to collect the unpaid principal and interest. Specifically, one Note was originally issued by Defendant on September 11, 2006 to CSI Business Finance in the principal amount of $355,000.00 ("Promissory Note 1") and the second Note was originally issued by Defendant on September 11, 2006 also to CSI Business Finance in the principal amount of $300,000.00 ("Promissory Note 2"). Both Notes state that they are controlled by Delaware law.

On June 25, 2015, an individual named Serge Mersillian purchased Promissory Note 1 from CSI Business Finance which then had an outstanding principal balance of $203,700 and purchased Promissory Note 2 from CSI Business Finance which then had an outstanding principal balance of $203,700. Then, also in 2015, Serge Mersillian, via a written assignment, assigned the Notes to Plaintiffs for valid consideration.

Defendant has acknowledged the existence of the Notes, the assignment to Mr. Mersillian and the subsequent assignment to the Plaintiffs in numerous public filings with the SEC and the OTC Markets Disclosure Service. In Defendant's Quarterly Report For the Period Ending April 30, 2020, publicly filed by Defendant with the OTC Markets Disclosure Service on July 15, 2020 (the "April 30, 2020 Disclosure Report"), Defendant stated as follows regarding the Notes.

> **The two notes which constitute this Note were originally issued in the amounts of $355,000 and $300,000 on September 11, 2006 and September 21, 2016**, respectively. The notes were issued by the Company to its Lender, CSI Business Finance, Inc. Several amendments to the notes to reduce the interest rate, adjust the conversion rate, and extend the maturity dates have occurred between the issuance dates and the date of

2

> this Reporting Period. These amendments have also resulted in two partial forgiveness of debt actions. For convenience the notes have been combined into one Note for this Disclosure Statement. [Reference is made to Note 6 to the Financial Statements accompanying this Disclosure Statement]. **On or about June 25, 2015, the Note was sold by CSI Business Finance, Inc., to Serge Mersilian, our former President and director, who in 2015 assigned the Note to Sarkis Sarkissian who continues as the holder of the Note.** (emphasis added)

The April 30, 2020 Disclosure Report was executed and certified by Mikael Lundgren, as Chief Financial Officer of Defendant.

Promissory Note 1 and Promissory Note 2 were each to mature on December 31, 2019 (the "Maturity Date") but on July 1, 2019, the Maturity Date for each was extended, in writing, to December 31 2021. Despite the December 31 2021 Maturity Date, each Note remains unpaid and Defendant is in default. Notably, in its motion to dismiss, Defendant did not raise a statute of limitations defense to this action or any other defense related to failure to state a cause of action under FRCP 12(b)(6).

Defendant's History

Defendant is a publicly traded company which is listed for quotation on the OTC Markets. While it is currently obligated to file reports pursuant to the Securities Exchange Act of 1934, as amended, from 2010 through 2020, it was not and made alternative forms of public disclosure. While currently named OpenLocker Holdings, Inc., Defendant has been a corporate chameleon which over time has been known by many different names, has been engaged in many different kinds of businesses, has been located in several different states and has had many sets of officers and directors[1]. The current set of officers and directors took office a little more than one year ago on May 31, 2022.

---

[1] According to the SEC's EDGAR system, the Defendant has had the following names over since 2007: Descrypto Holdings, Inc. (filings through 2022-10-31), Global Sports & Entertainment Inc. (filings through 2002-09-13), GWIN INC (filings through 2006-09-26), Imsco Inc /MA/ (filings through 2001-07-24),

3

In the Defendant's Form 8-K filed with the SEC on August 4, 2021 (the "August 4, 2021 8-K"), the Defendant described its corporate history as follows:

> W Technologies, Inc. was originally incorporated in Delaware in 1986. The Company reincorporated in Massachusetts in 1987. Until July 7, 1992, the Company was engaged in the sale of an automated luminometer and an accompanying reagent system that measures raw material for microbiological contamination. The Company discontinued operations and liquidated the remaining inventory of reagents on April 16, 1993. The Company reincorporated again in Delaware in May 1996 as IMSCO Technologies, Inc. At the time, the Company switched its focus to developing technology that achieves molecular separation with innovative applications of electrostatics. The Company ultimately abandoned these endeavors, and continued to go through shifts in its business operations. In 2001, the Company changed its name to Global Sports and Entertainment, Inc. In 2002, the Company changed its name to GWIN, Inc. The Company changed our name to Winning Edge International, Inc. in 2006 and in 2007, the Company changed our name to W Technologies, Inc. In February 2020, as a result of a change in our management, the Company transitioned our business model to the sales and distribution of medical-related devices and supplies.

Since the date of that report approximately two years ago, the Defendant once again changed its name to Descrypto Holdings, Inc. after a reverse merger with a cryptocurrency company, and then, conducted yet another reverse merger and once more changed its name, this time to the current name Open Locker Holdings, Inc. Simultaneously with each name change, there was also a change in the corporate officers and directors.

During the pertinent time period during which the Notes were issued, modified and/or extended, <u>the Defendant was not located within the State of Florida</u> and upon information and belief, the current officers and directors of the Defendant have no connection to any of the relevant facts of this action.

---

Imsco Technologies Inc /DE/ (filings through 2001-08-14), W Technologies, Inc. (filings through 2022-01-14) and Winning Edge International, Inc. (filings through 2007-11-28).

## III. ARGUMENT

### A. Defendant's Motion to Dismiss Should Denied

It is respectfully submitted that Defendant's motion to dismiss on the basis of no personal jurisdiction and improper venue, should be denied. As will be shown below, contrary to its contentions, Defendant conducted and transacted business in New York during the relevant time period and had sufficient contacts with New York to justify both general and specific jurisdiction. In addition, by virtue of Defendant removing this case to this Court, Defendant has waived its right to challenge venue.

Defendant attempts a sleight of hand by stating that "the claims alleged arose based upon alleged acts or omissions of OpenLocker, which would have occurred in Palm Beach County, Florida – at or near is principal place of business. p10, *Defendant's Memorandum of Law In Support of Motion*. <u>This assertion is completely untrue</u>. In fact, <u>none of the alleged acts or omissions of Defendant occurred in Florida or while Defendant was located in Florida</u>.

The relevant dates herein range from the issuance of the Notes in 2006, the purchase of the Notes, the assignments in 2015, the extension agreement and then the default in 2021 (the "Relevant Time Period"). Defendant conveniently fails to mention that during the Relevant Time Period, Defendant's principal place of business was in Nevada, then California and importantly then in New York County, New York. As stated above, over the last 17 years, Defendant has been known by at least eight different names, has been successively engaged in at least eight different kinds of businesses and moved its principal place of business at least four times. Defendant's place of business

has been located in Florida for less than the last two years, a fact that Defendant now tries to use it its advantage.

During the Relevant Time Period, Defendant did not have its offices in Florida, had no management in Florida and was not known as OpenLocker. All of the relevant facts, and the accruing of Defendant's liability under the Notes occurred prior to the Defendant relocating to Florida. Simple stated, the Defendant was in default under the Notes before it changed its name to OpenLocker Holdings and before moving its principal place of business to Florida.

New York Law Applies

In determining this motion, the Court should look to New York's law on general and specific jurisdiction. "Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (*citing Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).

In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion. Where a court relies on pleadings and affidavits, rather than conducting a full-blown evidentiary hearing, the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the

defendant and all pleadings and affidavits are to be construed in the light most favorable to the plaintiff. *DiStefano v. Carozzi N. Am., Inc.,* 286 F.3d 81, 84 (2d Cir.2001).

<u>This Court has General Jurisdiction Over Defendant</u>

Under New York CPLR § 301, a "court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore. New York courts have interpreted Section 301 to exercise jurisdiction over an out-of-state corporation that "has engaged in such a continuous and systematic course of 'doing business' in New York that a finding of its presence in New York is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.,* 750 F.3d 221, 224 (2d Cir. 2014). This test requires "'continuous, permanent, and substantial activity in New York." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000)); *Landoil Res.Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990). Separate and apart from New York statutory requirements, the Supreme Court has emphasized that for general jurisdiction purposes, due process is satisfied "only if [a company] is headquartered or incorporated in the forum state or is otherwise 'at home' in that state." *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014).

Defendant had sufficient contacts with New York by having it principal place of business located in New York during 2021. On July 29, 2021, Mr. Aleksandr Rubin become Chief Executive Officer, Principal Accounting Officer and Principal Financial Officer of Defendant, as well as a member of Defendant's Board of Directors. *August 4, 2021 8-K.*[2]  Mr. Rubin held those positions until November 18, 2021. *Defendant's Form*

---

[2] www.sec.gov/Archives/edgar/data/924396/000118518521001055/wtechnol20210721_8k.htm

*8-K filed on November 23, 2021.*[3] During that period of time, Mr. Rubin by his own admissions, maintained his place of business in New York and thus, operated the Defendant out of New York. Exhibit A contains a printout of Mr. Rubin's self authored LinkedIn profile[4], self authored PitchBook profile and printouts of the websites of various firm with which Mr. Rubin has been associated[5]. All state New York as his location.

As listed in his LinkedIn profile, Mr. Rubin's professional experience is as follows. From November 2021 to the present, Mr. Rubin was a partner at Aerial Capital. Aerial Capital's website[6] states that the address of that firm is 114 E 25th St New York, NY 10014. Next, his LinkedIn profile states that from November 2018 to January 2022, Mr. Rubin was Managing Director at Fort Lawton Capital. That firm's website[7] shows its address as 48 Wall Street, Suite 1100 New York, NY 10005. His LinkedIn profile then continues with his almost 16 year employment with New York City-based Glennwood Capital and more than three year employment with New York City-based Broadband Capital. In addition, Mr. Rubin's profile on the Pitchbook website[8], which would have been authored by Mr. Rubin himself, states that "He is based out of New York."

Thus, during part of the Relevant Time Period, Defendant's Chief Executive Officer, who as CEO would direct all activities of the Defendant, had a continuous presence in New York for decades, conducted business from offices in New York, and thus, Defendant availed itself of the laws of New York constituting sufficient contacts

---

[3] www.sec.gov/Archives/edgar/data/924396/000118518521001734/wtechnol20211122_8k.htm
[4] www.linkedin.com/in/aleksandr-rubin-80bb132/details/experience/
[5] Profiles shown on LinkedIN are authored by the individual whose profile is shown.
[6] www.aerial.capital
[7] www.ftlawton.com
[8] pitchbook.com/profiles/person/198350-83P#overview

with New York to justify jurisdiction over Defendant both pursuant to CPLR 311 and the U.S. Constitution.

It is expected that the Defendant will argue that the address of the Defendant at that time, as shown on the cover pages of Form 8-K filings, was 9440 Santa Monica Blvd., Suite 301, Beverly Hills CA. However, that address is a merely mail drop operated by Alliance Virtual Offices that was apparently used by the Defendant regardless of the actual location from which its Chief Executive Officer actually conducted business. Exhibit B is a real estate listing showing that Suite 301 at 9440 Santa Monica Blvd., Beverly Hills CA is Virtual Office Space available at $109 a month. Mr. Rubin's public statements regarding his residence and places of business should control.

Specific Jurisdiction

Plaintiffs can also show specific jurisdiction over Defendant. New York's long-arm statute, CPLR 302(a)(1), permits a court to exercise specific jurisdiction over a non-domiciliary if the defendant "transacts business within the state" and the "cause of action arise[s] from" that transaction. CPLR § 302(a)(1); *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015). Under New York law, a "defendant transacts business in New York if it has 'purposely availed [it]self of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its law.'" *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 387 (E.D.N.Y. 2015). It is not the quantity but the quality of the contacts that matters under our long-arm jurisdiction analysis. *Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 338, 960 N.Y.S.2d 695 (2012).

Herein, Defendant "transacted business" in New York by "purposefully availing itself of the privilege of conducting activities within New York" during the Relevant

9

Time Period via maintaining its principal place of business within New York. *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007) ("[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York."); *Kahn Lancaster, Inc. v. Lark Int'l Ltd.*, 956 F. Supp. 1131, 1125 (S.D.N.Y. 1997) ("nature and quality of the New York contacts must be examined to determine their significance.") (*citing George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648 (1997)).

It is clear that maintaining its principal place of business in New York County during the Relevant Time Period demonstrates that the Defendant purposefully availed itself of the privilege of conducting activities within New York and thus, Defendant is subject to New York jurisdiction.

### B. Defendant May Not Challenge Venue

Moving on to the next part of Defendant's motion, Plaintiffs need not analyze whether venue is proper. By removing the case to federal court as opposed to moving in New York Supreme Court to dismiss the action for improper venue, Defendant has waived its right to challenge this action based on improper venue. It is settled law that a party may not challenge venue of the removed case as of right, even if venue would have been improper had the case been initially brought in the district court. *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-66, 73 (1953); *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998).

### C. Defendant's Motion for Transfer Should Denied

It is respectfully submitted that should Defendant's motion to dismiss be denied then Defendant's motion for transfer on the basis of convenience should be denied as

10

well. As will be shown below, contrary to Defendant's contentions, there is no supportable basis for transferring this action to Florida. Furthermore, it is respectfully submitted that the Defendant's desire to transfer this action is not based on convenience but rather on gamesmanship, that is, it is an attempt to gain a tactical advantage over Plaintiffs, the parties with actual knowledge, who are located in Quebec, Canada.

Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). The Second Circuit has summarized some of the factors that a District Court is to consider in the exercise of its discretion: (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties. *D.H. Blair Co., Inc.* v. Gottdiener, *462 F.3d 95, 106-07* (2d Cir. 2006) (*quoting Albert Fadem Trust v. Duke Energy Corp.*, 214 F.Supp.2d 341, 343 (S.D.N.Y.2002)). Some courts have identified additional factors, including (1) "the forum's familiarity with governing law," and (2) "trial efficiency and the interest of justice, based on the totality of the circumstances." *Glass v. S & M NuTec*, 456 F.Supp.2d 498, 501 (S.D.N.Y. 2006).

There is no strict formula for the application of these factors and no single factor is determinative. *See, e.g., Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F.Supp.2d 395, 402 (S.D.N.Y. 2005). Instead, these factors <u>should be applied and weighed in the context of the individualized circumstances of the particular case</u>. The moving party, herein, Defendant, <u>bears the burden</u> of making a showing that transfer is

11

warranted in light of these factors. *See O'Hopp v. ContiFinancial Corp.,* 88 F.Supp.2d 31, 34 (E.D.N.Y.2000) (*citing Factors Etc., Inc. v. Pro Arts, Inc*., 579 F.2d 215, 218 (2d Cir.1978)). It is respectfully submitted that the Defendant has failed to meet its burden on any of the factors to be considered by this Court.

(1) <u>Plaintiffs' Choice of Forum</u> – A plaintiff's choice of forum is "presumptively entitled to substantial deference." *Gross v. British Broadcasting Corp.,* 386 F.3d 224, 230 (2d Cir. 2004) (*citation omitted*); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed").

Herein, Plaintiffs' choice of forum was New York Supreme Court, New York County and it should be give considerable weight. *D.H. Blair & Co., Inc*., 462 F.2d at 107. Defendant's claim that the locus of the facts is Palm Beach County, Florida is <u>simply not true</u>. None of the facts herein are related to Florida. Plaintiffs' choice of forum was a court located within New York County, New York and the Defendant has made no showing which justifies tipping that balance towards it.

(2) <u>The Convenience of the Witnesses</u> – Likewise, the convenience of the witnesses does not weigh in favor of Defendant. The material witnesses in this action are the Plaintiffs who are located in or around Montreal, Quebec and the former management of the Defendant during the 2019 to 2020 time frame, none of which are located in Florida. As stated above, the current management of the Defendant, who took office on May 31, 2022, would have no knowledge of the execution, extension, assignment or default of the Notes. Thus, this factor heavily weighs towards Plaintiffs.

(3) <u>The Location of Relevant Documents and Relative Ease of Access to Those Sources of Proof</u> – Upon information and belief, none of the relevant documents are in possession of the Defendant at its offices in Florida. The documents are in possession of the Plaintiffs, and <u>most,</u> if not all, of the relevant documents are in electronic form, almost all of which are posted on the SEC's EDGAR system or OTC Market's website. Since Defendant is not in possession of any physical records, no weight should be given to Defendant.

(4) <u>The Convenience of the Parties</u> – The convenience of the parties weighs heavily in favor of Plaintiffs. Plaintiffs are Canadian citizens residing in or around Montreal, Quebec, an approximate six hour drive to New York City. If the case is transferred to Florida, Plaintiffs would need to fly to Florida for depositions, hearings and trial, which will include multiple hotel stays, and will need to pay counsel to do the same. Plaintiffs, at this point in time, do not intend on deposing any members of the Defendant's current management, and thus, the burden of the case being transferred to Florida is borne entirely by Plaintiffs, two individuals who are trying to collect on 17 year old promissory notes which are long in default. Defendant, on the other hand, is a publicly traded company with sufficient resources to litigate this case in New York. In fact, in it Form 10-Q for the quarter ending April 30, 2023, Defendant stated that its assets are in excess of $5.1 million.[9]

Defendant is already litigating this action in this Court and already has qualified local counsel in place. In the event that this action is transferred to Florida, the costs to Plaintiffs to maintain this action will multiple several fold. Defendant is keenly aware

---

[9] www.sec.gov/ix?doc=/Archives/edgar/data/924396/000149315223020739/form10-q.htm

that a transfer would great increase Plaintiffs' litigation costs and it is respectfully submitted that this, and not the convenience of the witnesses (none is which are located in Florida), is Defendant's true motivation for seeking transfer.

On the other hand, Defendant suffers little or none inconvenience if this action is maintained in the Southern District of New York. For example, it will not need to fly witnesses from Florida to New York to testify. Therefore, it is respectfully submitted that the convenience of the parties weighs heavily in favor of the Plaintiffs.

(5) <u>The Locus of Operative Facts</u> – The locus of operative facts <u>is not Florida</u>. In fact, until Defendant relocated to Florida within the last two years, Defendant had no connection to Florida. During the Relevant Time Period, the Defendant had maintained places of business in Nevada, then California and then New York. Also to be noted is that Defendant is a Delaware corporation. Therefore, the Defendant has not met its burden regarding this factor.

(6) <u>The Availability of Process to Compel the Attendance of Unwilling Witnesses</u> – This factor favors neither party since most of the witnesses in this action are Plaintiffs' party witnesses. At most, Plaintiffs would seek a deposition of one former member of Defendant's management during the Relevant Time Period and such person is not located in Florida.

(7) <u>The Relative Means of the Parties</u> – As discussed above, this factor weights heavily in favor of the Plaintiffs.

The additional factors of (1) the forum's familiarity with governing law and (2) trial efficiency and the interest of justice, based on the totality of the circumstances, also weigh heavily in favor of the Plaintiffs. This Court is highly familiar with Delaware law.

In addition, it should be noted that Plaintiffs are holders in due course and have had no dealings with the Defendant at any time.

In summary, <u>Defendant voluntarily moved its offices to Florida within the last two years</u> and should not be able to use its relocation as a mechanism to prejudice the Plaintiffs by transferring this action to its current location. Thus, based upon the totality of the circumstances, it is respectfully submitted that transfer would not be appropriate.

### IV. CONCLUSION

It is respectfully submitted that the Defendant's motion to dismiss or for transfer should be denied in its entirety.

Dated :    New York, New York
           August 28, 2023

Respectfully Submitted,

CYRULI, SHANKS & ZIZMOR LLP

By: /s/ Paul Goodman
_____
         Paul Goodman

Attorneys for Plaintiffs
420 Lexington Avenue
Suite 2320
New York, New York 10170
(212) 661-6800